Robert L. Weigel
Howard S. Hogan
Alison L. Wollin
Anne M. Coyle
Kimberly L. Friedman
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc.,
Balenciaga S.A., Balenciaga America, Inc.,
Bottega Veneta S.A., Bottega Veneta Inc.,
Yves Saint Laurent America, Inc.,
Luxury Goods International (L.G.I.) S.A.,
and Kering S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                    :

| | |
|---|---|
| GUCCI AMERICA, INC.; BALENCIAGA S.A.; BALENCIAGA AMERICA, INC.; BOTTEGA VENETA S.A.; BOTTEGA VENETA INC.; YVES SAINT LAURENT AMERICA, INC.; LUXURY GOODS INTERNATIONAL (L.G.I.) S.A.; and KERING S.A., : | 2014 Civ. 5119 (PKC) |
|         Plaintiffs, : | |
|   -against- : | |
| ALIBABA GROUP HOLDING LTD. ET AL., : | |
|         Defendants. : | |

------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT
JUDGMENT**


New York, New York
July 17, 2015

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY............................................. 4

ARGUMENT ................................................................................................................... 6

I.    THIS COURT HAS JURISDICTION OVER ALL DEFENDANTS ............................... 6

    A.    Defendants Are Subject to Personal Jurisdiction Under CPLR
        302(a)(1) ........................................................................................................ 6

    B.    Defendants Are Subject to Personal Jurisdiction Under
        CPLR 302(a)(3) .............................................................................................. 8

    C.    Due Process Is Satisfied................................................................................. 9

II.   PLAINTIFFS ARE ENTITLED TO A DEFAULT JUDGMENT ................................. 10

    A.    All Merchant Defendants Were Properly Served but Failed to Answer.............. 10

    B.    The Merchant Defendants Have Admitted Their Liability................................. 10

III.  PLAINTIFFS ARE ENTITLED TO A DEFAULT JUDGMENT ON THEIR
    TRADEMARK CLAIMS ......................................................................................... 11

    A.    The Unrebutted Record Establishes that Defendants Have Engaged in
        Trademark Counterfeiting.............................................................................. 11

    B.    Injunctive Relief Is Appropriate ...................................................................... 12

    C.    Plaintiffs Are Entitled to an Accounting............................................................ 13

IV.   PLAINTIFFS HAVE ESTABLISHED THEIR RICO CLAIMS.................................... 17

    A.    The Unrebutted Record Establishes the Merchant Defendants' RICO
        Claims ............................................................................................................ 17

    B.    Plaintiffs Are Entitled to Treble Damages Under RICO ..................................... 21

V.    IN THE ALTERNATIVE, THE COURT MAY DECIDE THESE ISSUES
    UPON RESOLUTION OF THE RENEWED ACTION ................................................. 22

CONCLUSION................................................................................................................. 24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
    889 F. Supp. 2d 606 (S.D.N.Y. 2012) ...................................................................... 14

*Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*,
    975 F. Supp. 494 (S.D.N.Y. 1997) ..................................................................... 9, 11

*Appleton Elec. Co. v. Graves Truck Line, Inc.*,
    635 F.2d 603 (7th Cir. 1980) ................................................................................... 27

*Au Bon Pain Corp. v. Artect, Inc.*,
    653 F.2d 61 (2d Cir. 1981) ...................................................................................... 10

*Balenciaga Am., Inc. v. Dollinger*,
    No. 10-2912, 2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010)...................................... 11

*Baron Phillipe de Rothschild, S.A. v. Paramount Distillers, Inc.*,
    923 F. Supp. 433 (S.D.N.Y. 1996) ........................................................................... 7

*Bingham v. Zolt*,
    66 F.3d 553 (2d Cir. 1995) ...................................................................................... 21

*Blue v. Cablevision Sys., N.Y. City Corp.*,
    No. 00-3836, 2007 WL 1989258 (E.D.N.Y. July 5, 2007)...................................... 15

*Burberry Ltd. v. Doe*,
    No. 11-8306 (ECF 14) (S.D.N.Y. May 17, 2012) ................................................... 17

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ......................................................................... 7, 8, 10

*Citigroup Global Mkts, Inc. v. JWS 1999 Holding B.V.*,
    No. 08-5362, 2009 WL 2981912 (S.D.N.Y. Sept. 11, 2009) ................................. 11

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000) ............................................................... 7, 8, 9

*City of New York v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011) .................................................................................... 12

*Dawson v. Krolikowski*,
    530 N.Y.S.2d 931 (Sup. Ct. 1988).......................................................................... 16

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001) .............................................................................. 22, 23

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*,
No. 06-7827, 2008 WL 4449533 (S.D.N.Y. Oct. 2, 2008)................................. 19, 20

*F.T.C. v. 1263523 Ontario, Inc.*,
205 F. Supp. 2d 218 (S.D.N.Y. 2002) ............................................................... 10, 14

*Farberware, Inc. v. Groben*,
No. 89-6240, 1991 WL 123964 (S.D.N.Y. July 3, 1991)...................................... 28

*Frow v. De La Vega*,
82 U.S. 552 (1872)............................................................................................... 28

*GAKM Res. LLC v. Jaylyn Sales Inc*.,
No. 08-6030, 2009 WL 2150891 (S.D.N.Y. July 20, 2009)................................. 20

*GTFM, Inc. v. Solid Clothing Inc.*,
215 F. Supp. 2d 273 (S.D.N.Y. 2002) ............................................................... 14, 27

*Gucci Am. Inc. v. Bank of China*,
768 F.3d 122 (2d Cir. 2014) ............................................................................... 15

*Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*,
15 Civ. 3784 (PKC) ............................................................................................ 3

*Gucci Am., Inc. v. Curveal Fashion*,
No. 09-8458, 2010 WL 308303 (S.D.N.Y. Jan. 20, 2010) .................................. 18

*Gucci Am., Inc. v. Frontline Processing Corp.*,
721 F. Supp. 2d 228 (S.D.N.Y. 2010) ............................................................... 6, 9, 10

*Gucci Am., Inc. v. MyReplicaHandbag.com*,
No. 07-2438, 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) .................................. 18

*Gucci Am., Inc. v. Tyrrell-Miller*,
678 F. Supp. 2d 117 (S.D.N.Y. 2008) ............................................................... 10

*Hermès Int'l v. Doe*,
No. 12-1623 (S.D.N.Y. Apr. 30, 2012) ............................................................... 17

*Int'l Gemmological Inst., Inc. v. Rafaeil*,
No. 05-2395, 2005 WL 3880222 (S.D.N.Y. Aug. 16, 2005), *report &*
*recommendation adopted*, 2006 WL 739822 (S.D.N.Y. Mar. 21, 2006) .................... 22, 28, 29

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Johannes Baumgartner Wirtschafts Und Vermogensberatung GmbH v. Salzman,*
   No. 08-2582, 2010 WL 3937270 (E.D.N.Y. Sept. 30, 2010) ................................... 29

*Louis Vuitton Malletier & Oakley v. Veit,*
   211 F. Supp. 2d 567 (E.D. Pa. 2002) ................................................................. 14

*Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.,*
   648 F. Supp. 2d 501 (S.D.N.Y. 2009) ................................................................ 19

*Louis Vuitton Malletier v. WhenU.Com, Inc.,*
   No. 05-1325, 2007 WL 257717 (S.D.N.Y. Jan. 26, 2007) ..................................... 19

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,*
   658 F.3d 936 (9th Cir. 2011) ............................................................................ 28

*Louis Vuitton Malletier, S.A. v. LY USA,*
   No. 06-13463, 2008 WL 5637161 (S.D.N.Y. Oct. 3, 2008).................................... 21

*Maersk, Inc. v. Neewra, Inc.,* Civ.
   No. 05-4356, 2008 WL 1990648 (S.D.N.Y. Apr. 9, 2008), *report and
   recommendation adopted as modified*, 2008 WL 1986046 (S.D.N.Y. May 7, 2008) ............. 29

*Montcalm Pub. Corp. v. Ryan,*
   807 F. Supp. 975 (S.D.N.Y. Apr. 21, 1992) ......................................................... 28

*Moss v. Morgan Stanley Inc.,*
   719 F.2d 5 (2d Cir. 1984) ................................................................................. 22

*Muscletech Research and Dev., Inc. v. E. Coast Ingredients, LLC,*
   No. 00-0753A, 2004 WL 941815 (W.D.N.Y. Mar. 25, 2004) ................................. 24

*Nat'l Football League v. Miller,*
   54 U.S.P.Q.2d (BNA) 1574 (S.D.N.Y. 2000).......................................................... 9

*NFL v. Sunmei,*
   No. 13-2572 (S.D.N.Y. June 28, 2013) ................................................................ 20

*NFL v. Zhu,*
   No. 13-05416 (S.D.N.Y. Sept. 19, 2013)............................................................. 19

*Nike, Inc. v. Top Brand Co.,*
   No. 00-8179, 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006), *adopted in full by* 2006
   WL 2884437 (S.D.N.Y. Oct. 6, 2006) ................................................................. 20

iv

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Parker Waichman Alonso LLP v. The Orlando Firm, P.C.*,
No. 09-7401, 2010 WL 1956871 (S.D.N.Y. May 14, 2010) ................................................. 8, 9

*PDK Labs, Inc. v. Friedlander*,
103 F.3d 1105 (2d Cir. 1997) ............................................................................................ 6

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*,
970 F.2d 552 (9th Cir. 1992) .......................................................................................... 15

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
306 F.3d 99 (2d Cir. 2002) ....................................................................................... 10, 13

*River Light V, L.P. v. Lin & J Int'l, Inc.*,
No. 13-3669 (S.D.N.Y. July 10, 2015) ............................................................................ 17

*S.E.C. v. Mgmt. Dynamics, Inc.*,
515 F.2d 801 (2d Cir. 1975) ........................................................................................... 12

*Silhouette Int'l Schmied AG v. Vachik Chakhbazian*,
No. 04-3613, 2004 WL 2211660 (S.D.N.Y. Oct. 4, 2004) .................................................. 20

*Smoothline Ltd. v. N. Am. Foreign Trading Corp.*,
No. 00-2798, 2003 WL 941442 (S.D.N.Y. Mar. 7, 2003) .................................................. 13

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
450 F.3d 100 (2d Cir. 2006) ............................................................................................. 9

*Starbucks Corp. v. Morgan*,
No. 99-1404, 2000 WL 949665 (S.D.N.Y. July 11, 2000) .................................................. 10

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., Inc.*,
375 F. Supp. 2d 141 (E.D.N.Y.2005) .............................................................................. 26

*The North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd.*,
No. 10-1630 (S.D.N.Y. Sept. 13, 2010) ........................................................................... 17

*Thomas Publ'g Co. v. Indus. Quick Search, Inc.*,
237 F. Supp. 2d 489 (S.D.N.Y. 2002) ............................................................................... 8

*Tiffany (NJ) Inc. v. Luban*,
282 F. Supp. 2d 123 (S.D.N.Y. 2003) .............................................................................. 21

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Tiffany (NJ) LLC v. Dong*,
  No. 11-2183 (S.D.N.Y. Aug. 9, 2013), *adopted by* Default Judgment, *Tiffany (NJ) LLC v. Dong*, No. 11-2183 (Oct. 27, 2014) ............................................................... 15, 19, 20

*Tiffany (NJ) LLC v. Qi Andrew*,
  No. 10-9471 (S.D.N.Y. June 15, 2015) ................................................................. 15, 20

*Tory Burch LLC v. Yong Sheng Int'l Trade Co.*,
  No. 10-9336 (ECF 29) ............................................................................................ 15, 17

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*,
  109 F.3d 105 (2d Cir. 1997) ........................................................................................ 12

*True Religion Apparel, Inc. v. Xiokang Lee*,
  No. 11-8242 (ECF 31) (S.D.N.Y. Mar. 12, 2012) ...................................................... 17

*Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*,
  665 F. Supp. 2d 434 (S.D.N.Y. 2009) ......................................................................... 10

*United States v. Barton*,
  647 F.2d 224 (2d Cir. 1981) ......................................................................................... 22

*United States v. Feldman*,
  647 F.3d 450 (2d Cir. 2011) ......................................................................................... 25

*United States v. Pirello*,
  255 F.3d 728 (9th Cir. 2001) ........................................................................................ 25

*United States v. Sessa*,
  125 F.3d 68 (2d Cir.1997) ............................................................................................ 25

*United States v. Turkette*,
  452 U.S. 576 (1981)....................................................................................................... 22

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*,
  128 F.3d 86 (2d Cir. 1997) ........................................................................................... 14

*Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*,
  630 F. Supp. 2d 255 (E.D.N.Y. 2008) ......................................................................... 27

*Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*,
  373 F.3d 241 (2d Cir. 2004) ......................................................................................... 12

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*West Hills Farms, LLC v. ClassicStar, LLC,*
  No. 06-243, 2013 WL 4515046 (E.D. Ky. Aug., 23, 2013) .................................................. 15

### Statutes

15 U.S.C. § 1051 ............................................................................................................... 3

15 U.S.C. § 1114(1)(a) .................................................................................................... 13

15 U.S.C. § 1116(a) ........................................................................................................ 14

15 U.S.C. § 1117(a) ................................................................................................... 15, 16

15 U.S.C. § 1117(b) ............................................................................................. 16, 17, 21

15 U.S.C. § 1117(c) ........................................................................................................ 18

15 U.S.C. § 1118 ............................................................................................................. 14

15 U.S.C. § 1125(a)(1)(B) .............................................................................................. 13

18 U.S.C. § 1341 ............................................................................................................. 23

18 U.S.C. § 1343 ............................................................................................................. 23

18 U.S.C. § 19 ................................................................................................................. 21

18 U.S.C. § 1956 ............................................................................................................. 23

18 U.S.C. § 1956(a)(2)(A) .............................................................................................. 24

18 U.S.C. § 1956(c)(7)(D) .............................................................................................. 24

18 U.S.C. § 1961 ............................................................................................................. 22

18 U.S.C. § 1962(c) ........................................................................................................ 26

18 U.S.C. § 1962(c)-(d) .................................................................................................... 3

18 U.S.C. § 1962(d) ........................................................................................................ 25

18 U.S.C. § 1964(c) ........................................................................................................ 27

18 U.S.C. § 2320(a)(1) .................................................................................................... 23

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

18 U.S.C. § 2320(f)(5) .................................................................................. 24

N.Y. Gen. Bus. Law § 360-m ...................................................................... 14

**Other Authorities**

5 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:73 (4th
ed. 2015) ................................................................................................... 22

**Rules**

CPLR 302(a)(1) ............................................................................................ 6

CPLR 302(a)(3) ........................................................................................ 6, 8

CPLR 5222(b) ............................................................................................. 13

Fed. R. Civ. P. 12(a)(1)(A) .......................................................................... 5

Fed. R. Civ. P. 41(a)(1)(A) .......................................................................... 1

Fed. R. Civ. P. 54(c) ............................................................................. 10, 23

Fed. R. Civ. P. 55(b)(2) ............................................................................. 10

Fed. R. Civ. P. 69 ...................................................................................... 13

Fed. R. Civ. P. 69(a)(1) ............................................................................. 13

## PRELIMINARY STATEMENT

By Order dated July 1, 2015, this Court directed Plaintiffs Gucci America, Inc. ("Gucci"), Balenciaga S.A. and Balenciaga America, Inc. (collectively, "Balenciaga"), Bottega Veneta S.A. and Bottega Veneta Inc. (collectively, "Bottega Veneta"), Yves Saint Laurent America, Inc. and Luxury Goods International (L.G.I.) S.A. (collectively, "YSL"), and Kering S.A. (collectively, "Plaintiffs") to file a motion for default judgment against the remaining defendants in this action. In keeping with that instruction, Plaintiffs hereby respectfully submit this Memorandum of Law in support of their Motion for Default Judgment against defendants Hangzhou Yanbei Trading Co., Ltd., Yiwu Bothwiner Fashion Accessory Co., Ltd., Guangzhou Yongxing Leather Goods Mfg., Dongguan Huawang Leather Co., Ltd., Shen Zhen Aiers Watch Co., Ltd., Shenzhen Meigeer Watch Co., Ltd., Shenzhen Babylon Watch Co., Ltd. ("Alibaba.com Merchant Defendants"), VANCS Where Boutique, Celebrity Shoe, Jinlong Luxury City, Gucci Fashion Shop, Ladylidy Shop, Coco Fashion Style, Huiming Leather Mall, Hong Kong Longitude and Latitude International Trading ("Taobao.com Merchant Defendants"), Fashion Zone Ltd., and Star Factory (the "AliExpress Merchant Defendants") (collectively, "Merchant Defendants.").[1]

Plaintiffs commenced this action to protect the world famous trademarks of Gucci, Balenciaga, Bottega Veneta, and YSL (collectively, "Plaintiffs' Marks") from the willful and brazen fraud perpetrated by sellers of counterfeit goods who—without authorization or consent—intentionally misappropriated Plaintiffs' federally registered trademarks ("Plaintiffs' Marks") to market and sell various types of counterfeit versions of Plaintiffs' products including handbags, footwear, apparel, and accessories (the "Counterfeit Products").  The Merchant

---

[1] Plaintiffs were unable to effectuate service on "Spring Rain Leather Goods" and "Xiaohui Jin's Store," and do not seek default against these defendants.  Plaintiffs file herewith a voluntary dismissal of their claims without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A) against "Spring Rain Leather Goods" and "Xiaohui Jin's Store," and reserve the right to serve these merchants with an amended complaint in the Renewed Action.

Defendants have no defense to this conduct:  they each knowingly affixed exact copies of Plaintiffs' Marks to Counterfeit Products and exploited Plaintiffs' trademark names in connection with their online listings of the Counterfeit Products, as part of a calculated scheme to confuse consumers into associating the Counterfeit Products with Plaintiffs and to profit off of the good will Plaintiffs have built with their brands.  Merchant Defendants marketed these Counterfeit Products on Alibaba.com, Taobao.com, and AliExpress.com (the "Alibaba Marketplaces") to consumers world-wide, including to consumers in this District and throughout the United States, causing consumer confusion and irreparable harm to Plaintiffs in the form of loss of good will, brand dilution, and lost sales.

Merchant Defendants have all been duly served with process in this action pursuant to the service provisions of this Court's July 10, 2014 order, and have consciously chosen to default. As a result, Plaintiffs seek entry of a default judgment against them as to Plaintiffs' claims under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c)-(d), and New York state law.

Because Merchant Defendants willfully disregarded the Court's order to produce documents and records relating to their sales of Counterfeit Products, a precise calculation of the Merchant Defendants' sales is not possible—although the Alibaba Defendants in the related action, 15 Civ. 3784 (PKC), likely have relevant information.[2]  Accordingly, Plaintiffs

---

[2]   The "Alibaba Defendants" as referenced herein, includes the following entities who were defined as "Alibaba Defendants" in Plaintiffs' Complaint but were dismissed from this action:   Alibaba Group Holding Ltd. ("Alibaba Group"), Alibaba.com Hong Kong Ltd. ("Alibaba.com Hong Kong"), Alibaba.com Ltd. ("Alibaba Ltd."), Alibaba.com Investment Holding Ltd. ("Alibaba Investment Holding"), Alibaba.com Investment Ltd. ("Alibaba Investment"), Alibaba (China) Technology Co., Ltd. ("Alibaba Technology"), Alibaba.com, Inc., Taobao Holding Ltd. ("Taobao Holding"), Taobao China Holding Ltd. ("Taobao China Holding"), Taobao (China) Software Co., Ltd. ("Taobao Software"), and Alipay.com Co., Ltd. ("Alipay").  The Alibaba

*(Cont'd on next page)*

respectfully request that the Court address the issue of damages as follows:  (1) As set forth in the contemporaneously filed declarations of Laurent Claquin, Robert Holmes, and Anne M. Coyle (respectively, the "Claquin Default Declaration," "Holmes Default Declaration" and "Coyle Declaration"), Plaintiffs have submitted evidentiary support for a finding of the Alibaba.com Merchant Defendants' illicit profits based on the currently available evidence and have demonstrated an entitlement to an accounting and return of such profits, trebled, pursuant to the Lanham Act.  Due to the failure of the Taobao.com and AliExpress.com Merchant Defendants to produce any records, Plaintiffs are forced to rely on the statutory amounts set forth in 15 U.S.C. § 1117(c).  (2) In the alternative, as set forth below, an amount using statutory damages of $2 million per mark infringed by each of the Merchant Defendants as a proxy for an accounting is appropriate and calculated in a matter consistent with amounts awarded by other courts in comparable actions.  (3) For their claims pursuant to RICO, Plaintiffs separately seek a monetary award of the Alibaba.com Merchant Defendants' illicit profits, trebled, for which all Merchant Defendants are jointly and severally liable.  (4) Finally, if the Court is not inclined to award damages based on the current factual record, Plaintiffs request that the Court defer a finding of damages and instead order that damages be determined in an inquest or such other mechanism as the Court may deem appropriate.

Plaintiffs also request permanent injunctive relief, and a continuation of the asset restraint contained in the Preliminary Injunction against each of these Merchant Defendants to preserve their right to an equitable accounting under the Lanham Act and pursuant to the Court's inherent equitable powers and its power to coerce compliance with its lawful orders.

---

*(Cont'd from previous page)*

Defendants have also been named in the related action, *Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*, 15 Civ. 3784 (PKC), which was filed on May 15, 2015 (the "Renewed Action").

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The underlying facts giving rise to this action are set forth in greater detail in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order, Asset Restraining Order, Order Authorizing Expedited Discovery and Alternative Service by Electronic Mail, and Order to Show Cause for a Preliminary Injunction, dated July 9, 2014 ("TRO Brief") (ECF 15), the Declaration of Laurent Claquin, executed June 30, 2014 ("Claquin TRO Decl.") (ECF 16), the Declaration of Robert Holmes, executed July 3, 2014 ("Holmes TRO Decl.") (ECF 17), and the Declaration of Robert L. Weigel, executed on July 8, 2014 ("Weigel TRO Decl.") (ECF 18).[3]

Briefly stated, Plaintiffs learned of the Merchant Defendants' unlawful infringement through their anti-counterfeiting enforcement efforts and ongoing investigation into sales of counterfeit versions of Plaintiffs' products.  TRO Br. 4-15; Holmes TRO Decl. ¶¶ 3, 8-18, 20-26, 29-32, 34-39, 42-47, 49-51.  Merchant Defendants were manufacturing, advertising and offering for sale Counterfeit Products that not only copied the design, ornamentation, and other elements of trade dress unique to Plaintiffs' authentic products, but that were affixed with unauthorized versions of Plaintiffs' Marks.  *See generally* Claquin TRO Decl. ¶¶ 32-84; TRO Br. 3-4; Compl. (ECF 9), Exs. 1-4.  Plaintiffs discovered that the Merchant Defendants were offering Counterfeit Products for sale to the purchasing public in the New York metropolitan area and elsewhere in the United States through their online storefronts on the Alibaba Marketplaces.  TRO Br. 4-15.; Holmes TRO Decl. ¶¶ 3, 8-18, 20-25, 29-32, 34-39, 42-45, 53.  The scope of the Merchant Defendants' counterfeiting operations was massive.  In particular, the Alibaba.com Merchant

---

[3]  Plaintiffs originally filed the Summons, Complaint, TRO Brief, and all supporting declarations referenced herein on July 10, 2014, under seal.  The ECF references to the documents correspond to when they were re-filed pursuant to the Unsealing Order on July 24, 2014 (ECF 6).

Defendants each offered to sell tens of thousands of Counterfeit Products at wholesale prices. Holmes TRO Decl. ¶¶ 12-22; Claquin TRO Decl. ¶¶ 34-55.

On July 10, 2011, Plaintiffs brought this action asserting claims under the Lanham Act, RICO, and New York law seeking *ex parte* injunctive relief, permanent equitable relief including an accounting, and money damages. *See* Compl. at pp. 104-44 (ECF 9). This Court issued a temporary restraining order (the "TRO") containing provisions for alternative service (ECF 14), pursuant to which Plaintiffs served the Merchant Defendants via electronic means (ECF 19). The TRO, *inter alia*, ordered the Merchant Defendants to cease selling Counterfeit Products or otherwise infringing Plaintiffs' Marks, prohibited the Merchant Defendants from transferring any of their assets, provided for expedited discovery, and set the matter for a preliminary injunction hearing. TRO ¶¶ 2,3,6,9. As noted in the Clerk's Certificate of Default (ECF 30), the Merchant Defendants have defaulted by failing to answer or otherwise respond to the Complaint, by failing to produce any documents in response to discovery requests, and by failing to appear at the preliminary injunction hearing. *See* ECF 20 (Transcript of July 24, 2014 Hearing).[4]

Plaintiffs now bring this motion in compliance with the Court's July 1, 2015 order directing Plaintiffs to file this motion for default judgment. ECF 32. Plaintiffs have obtained the addresses of the Merchant Defendants from the Alibaba Defendants and will send copies of this motion and all supporting papers to the defaulting Merchant Defendants pursuant to Local Rule 55 and this Court's July 1 order.

---

[4] *See* Fed. R. Civ. P. 12(a)(1)(A) ("A defendant must serve an answer . . . within 21 days after being served with the summons and complaint"). Plaintiffs voluntarily dismissed claims against the Alibaba Defendants on July 24, 2014 (ECF 7) and engaged in prolonged settlement negotiations with the Alibaba Defendants. On May 15, 2015, Plaintiffs filed the Renewed Action against the Alibaba Defendants.

**ARGUMENT**

## I.     THIS COURT HAS JURISDICTION OVER ALL DEFENDANTS

Because the Lanham Act does not provide for nationwide service of process, personal

jurisdiction is determined by New York law pursuant to which the Merchant Defendants are

subject to personal jurisdiction in New York State and in this District.   "'Where a defendant

resides outside the forum state, a federal court applies the forum state's personal jurisdiction

rules if the federal statute does not specifically provide for national service of process.'"  *Gucci*

*Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 240 (S.D.N.Y. 2010) (quoting

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)).  Merchant Defendants'

infringing activities—specifically, their offering and supplying Counterfeit Products to New

York residents and committing tortious acts of trademark infringement causing injury to

Plaintiffs in New York—satisfy the requirements for long-arm jurisdiction under Section

302(a)(1) and Section 302(a)(3) of the New York Civil Practice Law & Rules ("CPLR").  *See*

TRO Br. 15-19.

### A.     Defendants Are Subject to Personal Jurisdiction Under CPLR
####        302(a)(1)

Section 302(a)(1) of the CPLR confers jurisdiction over a non-domiciliary defendant who

"transacts any business within the state or contracts anywhere to supply goods or services in the

state."  CPLR 302(a)(1).  Jurisdiction is appropriate where a defendant "purposefully avails itself

of the privilege of conducting activities within New York," and the cause of action "arises from

those activities.  *See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564, 566 (S.D.N.Y.

2000).[5]

---

[5]   Unless explicitly stated otherwise herein, all citations and quotations are omitted from case cites.

Courts have long held that the sale of infringing products to New York consumers is "sufficient to invoke jurisdiction . . . so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010); *see also Baron Phillipe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433, 436 (S.D.N.Y. 1996) ("shipments [of infringing goods] were purposeful and substantially related to plaintiffs' claim of trademark infringement"). Moreover, "a defendant need not be physically present in New York to transact business there within the meaning of" Section 302(a)(1). *Chloe*, 616 F.3d at 169. Here, the Merchant Defendants offer no defense to the well-pled allegations and sworn evidence that they marketed and sold Counterfeit Products to consumers in New York (*see* Compl.¶¶ 58), including offering to ship, and shipping, Counterfeit Products to Plaintiffs' investigator in New York (*see, e.g.,* Holmes TRO Decl. ¶¶ 22-24, 30-39, 45; *id*. Exs. 10-18, 21).

Merchant Defendants' operation of fully interactive infringing websites provides an alternative ground for personal jurisdiction under Section 302(a)(1). *See, e.g.*, *Chloe*, 616 F.3d at 170-71; *Parker Waichman Alonso LLP v. The Orlando Firm, P.C.*, No. 09-7401, 2010 WL 1956871, at *8 (S.D.N.Y. May 14, 2010). Merchant Defendants' operation and maintenance of their Alibaba online storefronts was, at all times relevant, highly interactive, accessible to consumers in New York, and provided New York residents the opportunity to purchase Counterfeit Products for shipment to New York (*see* Holmes TRO Decl. ¶¶ 3, 12-18, 22-24, 29-39, 42-45*; id.,* Exs. 1-7, 10-18, 20-21; *see also* Claquin TRO Decl. ¶¶ 50, 57-64, 67, 76, 81). Such activity clearly "involves more than the passive posting of information about [defendants'] products and services" *Citigroup*, 97 F. Supp. 2d at 565, and meets the standard for "transact[ing] business" within New York by contracting to supply goods to New York residents,

thereby invoking a basis for jurisdiction.  *Thomas Publ'g Co. v. Indus. Quick Search, Inc.*, 237 F.

Supp. 2d 489, 491-92 (S.D.N.Y. 2002).

### B.     Defendants Are Subject to Personal Jurisdiction Under CPLR 302(a)(3)

The Merchant Defendants are also subject to personal jurisdiction as a result of their

tortious, out-of-state acts of offering to sell and selling Counterfeit Products under Section

302(a)(3) of the CPLR, which confers personal jurisdiction where:

> (1) The defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; [and] (5) the defendant derives substantial revenue from interstate or international commerce.

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006). Courts

have repeatedly held that infringement of the trademark rights of parties in New York constitutes

an out-of-state tort that triggers personal jurisdiction under CPLR 302(a)(3).  *See Parker*

*Waichman Alonso LLP*, 2010 WL 1956871, at *9.[6]  Accordingly, because "[t]rademark

infringement is a tort for jurisdictional purposes" and "[i]njury within a state includes harm to a

business in the New York market in the form of lost sales or customers," *Frontline Processing*

*Corp.*, 721 F. Supp. 2d at 241-42, the Merchant Defendants' offering and sale of Counterfeit

Products to consumers in New York—where Plaintiffs maintain flagship stores and sell products

through authorized dealers—clearly supports this Court's jurisdiction under CPLR 302(a)(3).[7]

The Merchant Defendants do not dispute that they sold, and derived substantial revenue from the

sale of, the Counterfeit Products to consumers in New York, which caused consumer confusion

---

[6]  *See also Citigroup Inc.*, 97 F. Supp. 2d at 568 ("Injury within the state includes harm to a business in the New York market in the form of lost sales or customers."); *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997); *accord Nat'l Football League v. Miller*, 54 U.S.P.Q.2d (BNA) 1574, 1576 (S.D.N.Y. 2000).

[7]  *See* Holmes TRO Decl. ¶¶ 3, 12-18, 22-24, 30-32, 34-39, 44-45; *id.* Exs. 1-7, 10-11, 13-18, 20-21.

in New York and resulted in irreparable damage to Plaintiffs.[8]  As a result, the Merchant

Defendants should have reasonably expected their unlawful acts to cause consequences in New

York, thus satisfying the threshold requirement of Section 302(a)(3).  *Frontline Processing*

*Corp.*, 721 F. Supp. 2d at 243-44.  Further, the Merchant Defendants' refusal to participate in

discovery entitles Plaintiffs to an inference that the documents, if produced, would further

support Plaintiffs' position.  *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d

99, 110 (2d Cir. 2002).

### C.    Due Process Is Satisfied

This Court's exercise of personal jurisdiction over the Merchant Defendants is consistent

with the requirements of due process—namely "minimum contacts" and "reasonableness"—

because the Merchant Defendants purposefully directed their conduct at New York "by offering

[counterfeit products] for sale to New York consumers on . . . website[s] and by selling

[counterfeit products] to New York consumers."  *Chloe*, 616 F.3d at 171.  There is no question

that the Merchant Defendants have purposefully availed themselves of the privilege of

conducting business in New York by offering to ship Counterfeit Products to New York and

actually shipping Counterfeit Products to New York.[9]  As such, the Merchant Defendants could

reasonably foresee being haled into court in New York.[10]

---

[8]   *See Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*, 665 F. Supp. 2d 434, 436
(S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must 'accept [] as true all of
the factual allegations of the complaint'"); *F.T.C. v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 221 (S.D.N.Y.
2002) (defendant's failure to respond precludes the assertion of a "meritorious defense"); *Au Bon Pain Corp. v.
Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *accord Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119
(S.D.N.Y. 2008); *Starbucks Corp. v. Morgan,* No. 99-1404, 2000 WL 949665, at *1 (S.D.N.Y. July 11, 2000).

[9]   *See* Holmes TRO Decl. ¶¶ 3, 12-18, 22-24, 30-32, 34-39, 44-45; *id*. Exs. 1-7, 10-11, 13-18, 20-21.

[10]   *See Am. Network*, 975 F. Supp. at 498-500 (defendant could foresee being haled into court in New York where
defendant's website claimed to offer services across the United States and had signed up six subscribers in New
York); *Balenciaga Am., Inc. v. Dollinger*, No. 10-2912, 2010 WL 3952850, at *5 (S.D.N.Y. Oct. 8, 2010).

## II.  PLAINTIFFS ARE ENTITLED TO A DEFAULT JUDGMENT

### A.  All Merchant Defendants Were Properly Served but Failed to Answer

Plaintiffs are entitled to a default judgment under Fed. R. Civ. P. 55(b)(2), as all

Merchant Defendants were properly served but failed to appear, answer, or otherwise respond.

*See* Coyle Decl. Ex. 13 (Clerk's Certificate of Default) (ECF 30).[11]  Accordingly, entry of a

default judgment for relief specified by Plaintiffs' Complaint is wholly proper.  *See* Fed. R. Civ.

P. 54(c) (proving a default judgment "must not differ in kind from . . . what is demanded in the

pleadings"); *Citigroup Global Mkts, Inc. v. JWS 1999 Holding B.V.*, No. 08-5362, 2009 WL

2981912, at *1 (S.D.N.Y. Sept. 11, 2009); *see also* Compl. pp. 141-43 (seeking equitable

accounting, monetary damages, and permanent injunctive relief).

### B.  The Merchant Defendants Have Admitted Their Liability

"It is an 'ancient common law axiom' that a defendant who defaults thereby admits all

'well-pleaded' factual allegations contained in the complaint."  *City of New York v. Mickalis*

*Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Vt. Teddy Bear Co., Inc. v. 1-800*

*Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)); s*ee also Transatlantic Marine Claims Agency,*

*Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997).  The

Merchant Defendants have thus admitted all of the factual allegations in Plaintiffs' Complaint

(ECF 9), which establishes their liability on Plaintiffs' claims.  *See City of New York*, 645 F.3d at

128 ("entry of a default[] formalizes a judicial recognition that a defendant has, through its

failure to defend the action, admitted liability to the plaintiff"); *S.E.C. v. Mgmt. Dynamics, Inc.*,

---

[11]  Notably, five of the eighteen Merchant Defendants actually responded (via email) to service, some even apologizing for the counterfeit goods.  *See* Coyle Decl. Exs. 3-8 (Dongguan Huawang Leather Co., Ltd. (7-11-14 Email); Yiwu Bothwiner (7-11-14 Email); Shenzhen Meigeer Watch Co., Ltd (sent two Emails: 7/9/14; and 7-14-14 Email ("We sincerely apologize if our behavior hurt the above brands"); and Shen Zhen Babylon Watch Co., Ltd. (7-13-14 Email)).

515 F.2d 801, 814 (2d Cir. 1975) ("a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability").

### III.    PLAINTIFFS ARE ENTITLED TO A DEFAULT JUDGMENT ON THEIR TRADEMARK CLAIMS

#### A.    The Unrebutted Record Establishes that Defendants Have Engaged in Trademark Counterfeiting

Plaintiffs established the requisite elements of trademark counterfeiting; namely that the Plaintiffs' Marks are valid and entitled to protection and there is a likelihood of confusion between the Merchant Defendants' Counterfeit Products and Plaintiffs' authentic products.  *See* TRO Br. at 20-26.   Under the Lanham Act, anyone who makes commercial use of a counterfeit mark "shall be liable" to the mark's owner (*see* 15 U.S.C. § 1114(1)(a)), and anyone who uses any mark or false designation of origin that, "in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities" of the products offered for sale, is liable to the mark's owner.  15 U.S.C. § 1125(a)(1)(B).

Here, there can be no dispute that Plaintiffs' investigator accessed the Merchant Defendants' infringing online stores, that the Merchant Defendants offered their Counterfeit Products to Plaintiffs' investigator for shipment to New York and elsewhere in the United States, or that the Counterfeit Products are not authentic.  *See generally* TRO Brief; Holmes TRO Decl.; Claquin TRO Decl.  Moreover, Plaintiffs have provided sufficient evidence to demonstrate that the Merchant Defendants misleadingly described their Counterfeit Products to confuse consumers into believing they are associated with Plaintiffs.  *See* Claquin TRO Decl. ¶¶ 34-86.  Again, Merchant Defendants' failure to produce a single document in response to the Court-ordered discovery entitles Plaintiffs to a presumption that any such response, including any and all documents, if produced, would support Plaintiffs' position.  *See, e.g.*, *Residential Funding*

*Corp.*, 306 F.3d at 110; *Smoothline Ltd. v. N. Am. Foreign Trading Corp.*, No. 00-2798, 2003 WL 941442, at *6 (S.D.N.Y. Mar. 7, 2003).

### B.      Injunctive Relief Is Appropriate

Plaintiffs respectfully request that the Court apply the key terms of the TRO and Preliminary Injunction Order to a permanent injunction enjoining the Merchant Defendants' infringing conduct.  The Lanham Act and the New York General Business Law both specifically authorize injunctive relief in cases such as this, where the defendant has infringed or diluted another's trademark rights.  *See* 15 U.S.C. §§ 1116(a), 1118; N.Y. Gen. Bus. Law § 360-m; *see also GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 307 (S.D.N.Y. 2002).  Injunctive relief is particularly appropriate where, as here, "there is a cognizable danger that, in the absence of an injunction . . . , [the defendants] will continue to" engage "in fraudulent, deceptive trade practices."  *1263523 Ontario, Inc.*, 205 F. Supp. 2d at 222-23.

Many courts have granted injunctive relief in trademark cases where the defendants have defaulted.  *See, e.g.*, *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 88 (2d Cir. 1997); *Louis Vuitton Malletier & Oakley v. Veit*, 211 F. Supp. 2d 567, 589 (E.D. Pa. 2002).  "[T]he standard for a permanent injunction is essentially the same as for a preliminary injunction, the difference being that the plaintiff must show actual success."  *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 889 F. Supp. 2d 606, 611 (S.D.N.Y. 2012).

Plaintiffs also respectfully request that the Court continue to restrain the Merchant Defendants' assets to preserve Plaintiffs' right to an equitable accounting.  The asset restraint is necessary to preserve Plaintiffs' right to an equitable accounting—a right the Second Circuit expressly upheld—and includes assets held abroad.  *Gucci Am. Inc. v. Bank of China*, 768 F.3d 122, 130-33 (2d Cir. 2014).  Plaintiffs are entitled to an accounting of the Merchant Defendants' profits pursuant to 15 U.S.C. § 1117(a), which "impos[es] on a defendant the obligation to

disclose and return profits" to Plaintiffs. *Gucci Am. Inc.*, 768 F.3d at 131.  This is why numerous courts within this District have specifically awarded an ongoing asset restraint as a provision of a final default judgment in order to prevent counterfeiters from hiding their assets.[12]  Here, a continuing asset restraint is particularly appropriate if the Court is inclined to defer a final accounting against the Merchant Defendants.[13]

Given the likelihood that Plaintiffs will be irreparably harmed in the absence of the injunctive relief requested above, entry of a permanent injunction is appropriate.

### C.   Plaintiffs Are Entitled to an Accounting

Under the Lanham Act, a trademark owner is entitled to an accounting of the profits from Defendants' infringing activity.  *See* 15 U.S.C. § 1117(a).  Moreover, the Lanham Act further provides that in assessing these damages "in a case involving use of a counterfeit mark . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee." 15 U.S.C. § 1117(b).  Plaintiffs requested such an accounting in their Complaint.  Plaintiffs have

---

[12]  *See, e.g., Tiffany (NJ) LLC v. Dong*, No. 11-2183 (ECF 48) at 9 (S.D.N.Y. Oct. 27, 2014) ("all Defendants' Assets that have been previously identified as frozen or that were otherwise required to be restrained in compliance with this Court's Orders, continue to be restrained"); *Tory Burch LLC v. Yong Sheng Int'l Trade Co.*, No. 10-9336 (ECF 29) at 6 (S.D.N.Y. May 13, 2011) (ordering continuing asset restraint "in accordance with this Court's inherent equitable powers and its power to coerce compliance with its lawful orders"); *see also Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559-60 (9th Cir. 1992) (district court has inherent power to freeze assets to ensure availability of accounting of profits as a form of final relief); *West Hills Farms, LLC v. ClassicStar, LLC*, No. 06-243, 2013 WL 4515046, at *1 (E.D. Ky. Aug., 23, 2013).  *But see* Opinion & Order, *Tiffany (NJ) LLC v. Qi Andrew*, No. 10-9471 (ECF 104) (S.D.N.Y. June 15, 2015) and Default Judgment, *Tiffany (NJ) LLC v. Qi Andrew*, No. 10-9471 (ECF 106) (S.D.N.Y. June 23, 2015) (refusing to maintain post-judgment asset restraint to support an equitable accounting, but ordering defendants' assets restrained pursuant to Section 5222 of the CPLR).

[13]  Alternatively, Plaintiffs are entitled to a post-judgment asset freeze pursuant to the operation of New York State law remedies by operation of Fed. R. Civ. P. 69.  *See Blue v. Cablevision Sys., N.Y. City Corp.*, No. 00-3836, 2007 WL 1989258, at *2 n.1 (E.D.N.Y. July 5, 2007).  That provision permits issuance of a restraining notice against the judgment debtor that, with certain exceptions not relevant here, prohibits disposition or transfer of property "until the judgment . . . is satisfied."  CPLR 5222(b); *see also Dawson v. Krolikowski*, 530 N.Y.S.2d 931, 935 (Sup. Ct. 1988).  Consequently, this Court may readily maintain the asset freeze in "accord with the procedure of [New York]," Fed. R. Civ. P. 69(a)(1).

submitted evidence of the Defendants' profits based on the evidence available, without the

benefit of discovery from the defaulting Merchant Defendants.  Based on the information that the

Alibaba.com Merchant Defendants themselves provided on their Alibaba storefronts, Plaintiffs

ask this Court to award them 10% of each Merchant Defendants' self-proclaimed capacity to

produce the Counterfeit Products bearing Plaintiffs' Marks, as set forth in detail in the Holmes

Default Declaration (¶¶ 10, 11 and Table A).[14]  Plaintiffs used a conservative methodology to

estimate these Merchant Defendants' revenues as only 10% of their advertised sales capacity.[15]

If these amounts are trebled, as 15 U.S.C. § 1117(b) requires, each award would be well within

the range that courts in this district normally award against counterfeiters.  *See, e.g., True

Religion Apparel, Inc. v. Xiokang Lee*, No. 11-8242 (ECF 31) (S.D.N.Y. Mar. 12, 2012)

(awarding $864 million); *Burberry Ltd. v. Doe*, No. 11-8306 (ECF 14) (S.D.N.Y. May 17, 2012)

(awarding $80 million); *Tory Burch LLC v. Yong Sheng Int'l Trade Co.*, No. 10-9336 (ECF 29)

(S.D.N.Y. May 13, 2011) (awarding $164 million); *Hermès Int'l v. Doe*, No. 12-1623 (S.D.N.Y.

Apr. 30, 2012) (awarding $100 million); *The North Face Apparel Corp. v. Fujian Sharing

Import & Export Ltd.*, No. 10-1630 (S.D.N.Y. Sept. 13, 2010) (awarding $78 million); *River

Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13-3669 (S.D.N.Y. July 10, 2015) (awarding $41

million).

Indeed, the Alibaba.com Merchant Defendants offered to sell tens of thousands of units

of Counterfeit Products, demonstrating that their operations were both willful and large-scale.

For instance, Hangzhou Yanbei was offering a near exact replica "Gucci" handbag made of

---

[14]   As noted above, Plaintiffs lack sufficient information concerning the other Merchant Defendants' businesses to
establish a reasonable estimate of their sales.

[15]   Pursuant to 15 U.S.C. § 1117(a), "plaintiff shall be required to prove defendant's sales only; defendant must
prove all elements of cost or deduction claimed."

synthetic leather for $2-$5 per unit, with a minimum purchase order of 2,000 units and up to *50,000* units.  *See* Holmes TRO Decl. ¶ 12; *id.* Ex. 1.  Similarly, Yiwu Bothwiner offered for sale both "Gucci" and "YSL" handbags and wallets in quantities of up to *10,000* per month.  *See* Holmes Default Decl. ¶¶ 21-22; *id.* Exs. 1-3.  Each of the Alibaba.com Merchant Defendants discussed were verified "Gold Suppliers" on Alibaba.com while they were in operation, a status that requires that the merchant pass an inspection and verification carried out by a third-party verification company.  *Id.* ¶ 9.  The production capacities denoted on the face of the Alibaba.com electronic storefronts of at least six of the seven Alibaba.com Merchant Defendants have been vetted and verified by a third-party company.  *Id.* ¶ 10 n.5.

As to the Taobao.com and AliExpress.com Merchant Defendants, their default has deprived Plaintiffs of any information concerning their sales volume.  Fortunately, Congress has provided this Court with broad discretion to fashion an appropriate statutory damages award in cases like this, up to $2 million per counterfeit mark per type of good under 15 U.S.C. § 1117(c)—as a proxy for the Merchant Defendants' profits.  Here, the counterfeiting of the Plaintiffs' Marks was unquestionably willful.  "The very nature of Defendants' business, which involved the open sale of 'replica' [products], demonstrates that the infringement was willful."  *Gucci Am., Inc. v. Curveal Fashion*, No. 09-8458, 2010 WL 308303, at *3 (S.D.N.Y. Jan. 20, 2010).  In addition, "[w]hen a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer."  *Gucci Am., Inc. v. MyReplicaHandbag.com*, No. 07-2438, 2008 WL 512789, at *3 (S.D.N.Y. Feb. 26, 2008); *Louis Vuitton Malletier v. WhenU.Com, Inc.*, No. 05-1325, 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007).[16]

---

[16]  *See also Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("[B]y virtue of its default, [defendant] has admitted . . . that it acted knowingly and intentionally or with reckless disregard or willful blindness"); *Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*, No. 06-7827,

*(Cont'd on next page)*

Several Taobao.com Merchant Defendants had rankings indicating customer feedback for thousands of transactions (which likely represent only a fraction of total sales transactions by those merchants).  *See* Holmes Default Decl. ¶ 45, 50, 53, 64.  For example, VANCS Where Boutique, which sold counterfeit "Gucci" shoes for $40 (the authentic Gucci shoes retail for over $400), had a ranking indicating feedback for 10,00-20,000 transactions.  *See id.* 45.  In addition, because the defendants "market their wares online, they also obviously have the ability to reach a virtually limitless number of potential customers worldwide," entitling Plaintiffs to a "substantial damages award."  *See* Report and Recommendation, *Tiffany (NJ) LLC v. Dong*, No. 11-2183 (ECF 31) at 14 (S.D.N.Y. Aug. 9, 2013), *adopted by* Default Judgment, *Tiffany (NJ) LLC v. Dong*, No. 11-2183 (S.D.N.Y. Oct. 27, 2014).

Under these circumstances, courts within this District typically award statutory damages of one or two million dollars per counterfeit mark per type of good sold.  *See, e.g.*, *NFL v. Zhu*, No. 13-05416 (ECF No. 29) (S.D.N.Y. Sept. 19, 2013) (awarding $2 million per counterfeit mark for a total of $136 million); *NFL v. Sunmei*, No. 13-2572 (ECF No. 48) (S.D.N.Y. June 28, 2013)  (awarding $2 million per counterfeit mark for a total of $273 million); *Nike, Inc. v. Top Brand Co.*, No. 00-8179, 2006 WL 2946472, at *3 (S.D.N.Y. Feb. 27, 2006), *adopted in full by* 2006 WL 2884437, at *2-*3 (S.D.N.Y. Oct. 6, 2006) (awarding $1 million per counterfeit mark per type of good for a total of $38 million); *Tiffany (NJ) LLC v. Qi Andrew*, No. 10-9471 (ECF 106) (S.D.N.Y. June 23, 2015) (awarding $1 million per counterfeit mark for a total of  $52.3 million); Default Judgment, *Tiffany (NJ) LLC v. Dong*, No. 11-2183 (ECF 48) (S.D.N.Y. Oct. 27,

---

*(Cont'd from previous page)*

2008 WL 4449533, at *5 (S.D.N.Y. Oct. 2, 2008) ("The defendant's willfulness in violating the trademark law is established by virtue of its failure to controvert the circumstantial evidence of willfulness alleged in the complaint").

2014); ($1 million per counterfeit mark for total of $52 million).

Here, given Merchant Defendants' tactical decision to ignore the Court's explicit order requiring the production of documents, such an award would be particularly appropriate given that Plaintiffs are entitled to a presumption that the requested documents, if produced, would have been harmful to Defendants' case.[17]  Moreover, Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in bringing these claims, both pursuant to the Lanham Act and also under the RICO claims discussed later in this brief.[18]  Rather than request attorneys' fees, however, Plaintiffs respectfully request that the Court take into account the need to compensate Plaintiffs for their attorneys' fees in setting the appropriate equitable award.

If, however, the Court is not inclined to award damages based on the current factual record or for the reasons discussed in Section V, Plaintiffs request that the issue of damages be deferred until such time as Plaintiffs can obtain an accounting of the Merchant Defendants' sales of Counterfeit Products in the Renewed Action so that Plaintiffs can make a determination whether to elect statutory damages.  *See infra* at Section V.

## IV.    PLAINTIFFS HAVE ESTABLISHED THEIR RICO CLAIMS

### A.    The Unrebutted Record Establishes the Merchant Defendants' RICO Claims

In addition to Plaintiffs' trademark claims, the admitted factual allegations of the Complaint also establish that the Merchant Defendants violated RICO and conspired to violate

---

[17]    *See Ermenegildo Zenga Corp.*, 2008 WL 4449533, at *5 (drawing all reasonable inferences against defendant when awarding statutory damages where "defendant's failure to respond to the papers seeking a default judgment has left the Court with no information as to any of the factors relating to the defendant's circumstances"); *accord GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08-6030, 2009 WL 2150891, at *6 (S.D.N.Y. July 20, 2009); *Silhouette Int'l Schmied AG v. Vachik Chakhbazian*, No. 04-3613, 2004 WL 2211660, at *2 (S.D.N.Y. Oct. 4, 2004).

[18]    For the Lanham Act, *see* 15 U.S.C. § 1117(b); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); *Louis Vuitton Malletier, S.A. v. LY USA*, No. 06-13463, 2008 WL 5637161, at *3 (S.D.N.Y. Oct. 3, 2008).  For RICO, *see* 18 U.S.C. § 19; *Bingham v. Zolt*, 66 F.3d 553, 565-66 (2d Cir. 1995).

RICO under 18 U.S.C. § 1962(c) and (d).  Compl. ¶¶ 308-45.   To state a claim for damages

under RICO, a plaintiff must satisfy two pleading burdens—first, the plaintiff must allege "(1)

that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4)

of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or

participates in (6) an 'enterprise'[19] (7) the activities of which affect interstate or foreign

commerce"; and second, the plaintiff must allege that he or she was "injured in his [or her]

business or property *by reason of* [the RICO violation]."  *See Moss v. Morgan Stanley Inc.*, 719

F.2d 5, 17 (2d Cir. 1984).

The Complaint describes in detail how the Merchant Defendants have participated in the

operation and management of an association-in-fact enterprise (with the Alibaba Defendants and

unidentified co-conspirators), whose purpose was to sell and profit from the sale of Counterfeit

Products.  Compl. ¶¶ 311-12, 313(c), 315.[20]  In connection with this enterprise, the Merchant

Defendants manufactured and distributed a substantial volume of counterfeit goods, offered

those goods for sale through the Alibaba Marketplaces, and repeatedly shipped those goods to

the United States and elsewhere, thus affecting foreign commerce.[21]  Compl. ¶¶ 313(c); 314.  The

Complaint also alleges that as a direct and proximate result of the Merchant Defendants'

participation in this enterprise in violation of RICO, Plaintiffs suffered, among other things,

brand dilution, loss of goodwill, lost sales, and direct expenses from Plaintiffs' efforts to stop the

---

[19]  "The term 'enterprise is broadly defined to include 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Int'l Gemmological Inst., Inc. v. Rafaeil*, No. 05-2395, 2005 WL 3880222, at *5 (S.D.N.Y. Aug. 16, 2005), *report & recommendation adopted*, 2006 WL 739822 (S.D.N.Y. Mar. 21, 2006) (citing 18 U.S.C. § 1961(4)).

[20]  The Supreme Court described an "association in fact" enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

[21]  *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) (the "law in this Circuit" does not require RICO plaintiffs to show more than a "minimal effect" on interstate or foreign commerce—so long as "the activities of the enterprise affect interstate commerce, the jurisdictional element is satisfied.") (*quoting United States v. Barton*, 647 F.2d 224, 309 (2d Cir. 1981)).

sale of counterfeit products.  Compl. ¶¶ 315, 334.  Plaintiffs have sufficiently alleged that their

RICO claims against the Merchant Defendants are predicated on a pattern of "ongoing"

racketeering activity that—absent the Court's continued injunctive relief—"will likely continue

into the future," involving multiple predicate acts: (1) trafficking in counterfeit goods in violation

of 18 U.S.C. § 2320(a)(1); (2) money laundering in violation of 18 U.S.C. § 1956, and (3) mail

and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.[22]  Compl. ¶¶ 315, 335.  RICO expressly

defines "racketeering activity" to include these predicate acts.  18 U.S.C. § 1961(1)(B).  By

defaulting, the Merchant Defendants have conceded these allegations.

    <u>Trafficking in Counterfeit Goods</u>.  The Complaint alleges that the Merchant Defendants

intentionally participated in a scheme using the Alibaba Marketplaces to transport, transfer, or

otherwise dispose of counterfeit goods, knowing that these goods were counterfeit.  Compl.

¶¶ 316-21; 18 U.S.C. §§ 2320(a)(1) (making it unlawful to "intentionally traffic[] in goods or

services and knowingly use[] a counterfeit mark on or in connection with such goods or

services").[23]  Specifically, the Merchant Defendants "engineered an organized operation to sell

and profit from the sale of counterfeit goods through the Alibaba Marketplaces, by, among other

things, making, distributing, advertising, and selling goods upon which or in connection with

which counterfeit marks . . . are used."  Compl. ¶ 317.  The Complaint alleges that the "sale and

---

[22]  A plaintiff must allege at least two acts of racketeering activity committed in a 10-year period and that the predicate acts are "related and that they amount to or pose a threat of continued criminal activity," either through "closed" or "open-ended continuity."  <i>DeFalco</i>, 244 F.3d at 320.  Open-ended continuity, which is present here, involves "a threat of continuing criminal activity beyond the period during which the predicate acts were performed."  <i>Id.</i> at 323.  Moreover, where—as here—"an inherently unlawful act," such as trafficking in counterfeit goods, money laundering, or mail and wire fraud, "is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of continued criminal activity, and thus open-ended continuity."  <i>Id.</i> (collecting cases).

[23]  The term "traffic" means "to transport, transfer, or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain, or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of."  18 U.S.C. § 2320(f)(5).

transport of such Counterfeit Products [was] vast in volume" and specifically describes twelve instances of such trafficking.  Compl. ¶ 318.

Money Laundering.  The Complaint alleges that the Enterprise engaged in multiple counts of money laundering in violation of 18 U.S.C. § 1956(a)(2)(A)[24] through transmissions involving the sale and receipt of payment from purchasers of Counterfeit Products through the Alibaba Marketplaces by persons in the United States.  Compl. ¶ 323.  The Complaint lists ten specific examples of such transmissions.  By defaulting, the Merchant Defendants have admitted these allegations.

Mail and Wire Fraud.  A scheme to sell counterfeit merchandise qualifies as a "scheme to defraud," within the meaning of the mail and wire fraud statutes, which prohibit use of the mails or wires in furtherance of a scheme to defraud.  *See Muscletech Research and Dev., Inc. v. E. Coast Ingredients, LLC*, No. 00-0753A, 2004 WL 941815, at *17-18 (W.D.N.Y. Mar. 25, 2004) (scheme to sell counterfeit products was mail and wire fraud); 18 U.S.C. §§ 1341, 1343; *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000).  Moreover, operation of an interactive website constitutes use of the wires.  *See, e.g., United States v. Feldman*, 647 F.3d 450, 452 (2d Cir. 2011) (affirming wire fraud conviction based on defendant's use of the Internet to solicit buyers for fraudulent organ transplant services); *United States v. Pirello*, 255 F.3d 728, 732 (9th Cir. 2001) (affirming sentence of defendant who used website to commit wire fraud).

The admitted factual allegations of the Complaint establish multiple instances of mail and wire fraud, detailing how the Merchant Defendants misappropriated Plaintiffs' intellectual

---

[24]  This provision covers: "[w]hoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity."  "Specified unlawful activity" includes violations of 18 U.S.C. § 2320, relating to trafficking in counterfeit goods and services.  18 U.S.C. § 1956(c)(7)(D).

property through the promotion, sale and shipment of counterfeit products through use of the

interstate mail system and interactive websites.  Compl. ¶¶ 324-29.  As evidence of the

defendants' vast counterfeiting scheme, the Complaint details four specific instances of mail

fraud and twelve instances of wire fraud, describing the precise details of each sale of counterfeit

goods and the shipment of those goods to New York or Texas.  Compl. ¶¶ 325, 328.

RICO Conspiracy Claim.  Default judgment is also warranted on Plaintiffs' RICO

conspiracy claim because the undisputed factual allegations establish that the Merchant

Defendants agreed to violate RICO's substantive provisions.  Compl. ¶¶ 338-45 (Seventh Cause

of Action); 18 U.S.C. § 1962(d) ("It shall be unlawful for any person to conspire to violate [18

U.S.C. § 1962(c)].");  *United States v. Sessa,* 125 F.3d 68, 71 (2d Cir.1997) (to establish a RICO

conspiracy, plaintiff must prove "only the existence of an agreement to violate RICO's

substantive provisions").  A RICO conspiracy requires "(1) an agreement to commit predicate

acts, (2) knowledge that the acts are part of a pattern of racketeering activity, (3) overt acts in

furtherance of the conspiracy that must also be predicate acts, (4) causing (5) injury to the

plaintiff's business or property."  *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., Inc.,* 375 F.

Supp. 2d 141, 150 (E.D.N.Y.2005).  The Complaint alleges that the Merchant Defendants

"knowingly" and "willfully" "agreed together and with others" to commit the predicate acts of

racketeering as set forth above and to engage in a conspiracy to sell and profit from the sale of

counterfeit goods in violation of RICO.  Compl. ¶¶ 339-40.  And the Complaint alleges they

actually *committed* the predicate acts, which caused Plaintiff significant harm.  Compl. ¶¶ 339-

40.  By defaulting, the Merchant Defendants have admitted these allegations.

### B.    Plaintiffs Are Entitled to Treble Damages Under RICO

Furthermore, Plaintiffs' supporting affidavits and evidence also prove that the Merchant

Defendants' counterfeiting scheme directly and proximately harmed Plaintiffs and caused them

to incur money damages.  As a direct and proximate result of the Merchant Defendants' RICO violations, Plaintiffs suffered brand dilution, loss of goodwill, and lost sales.  *See* Compl. ¶¶ 315, 334; Claquin Default Decl. ¶¶ 87-89.  Here, because the Merchant Defendants have refused to comply with the Court's discovery orders, the best approximation of the harm caused by their conduct is the calculation of the Merchant Defendants' profits based on the existing record, where available.  *See* Holmes Default Decl. Table A.[25]    Under RICO, Plaintiffs are entitled to treble damages in the amounts set forth in the Holmes Declaration.  18 U.S.C. § 1964(c).[26]

An award of money damages, moreover, comports with Rule 54(c) because they do not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  There is no dispute that the Merchant Defendants received notice of the Complaint and TRO and yet failed to answer.  *See supra* Section II.A.  Even though Plaintiffs did not demand a specific dollar amount in the Complaint, that does not provide a basis to deny a specific damages award now.  *See, e.g., Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 611 (7th Cir. 1980).

## V.    IN THE ALTERNATIVE, THE COURT MAY DECIDE THESE ISSUES UPON RESOLUTION OF THE RENEWED ACTION

Plaintiffs recognize that the Alibaba Defendants are likely to dispute the existence of a RICO conspiracy and enterprise between themselves and the Merchant Defendants in the

---

[25]   It is well established that a counterfeiter's profits is often a reflection of the lost sales and harm caused to plaintiffs; plaintiffs in counterfeiting cases are therefore often prohibited from recovering both lost sales and defendants' profits as that would be duplicative.  *See, e.g., Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 264 (E.D.N.Y. 2008) (awarding $7.4 million in lost profits damages but declining to award damages for defendant's profits for the same infringing sales, as this "would constitute an impermissible double recovery"); 5 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:73 (4th ed. 2015).  *But see GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2002) (awarding plaintiff both defendant's profits and plaintiff's lost profits based on the same transactions, without discussion of a double recovery).

[26]   As discussed *supra*, Section III.C, Plaintiffs are also entitled to an award of their attorneys' fees under RICO, but have asked that the Court consider the need to compensate these costs in setting an appropriate equitable award generally.

Renewed Action and other elements of Plaintiffs' accounting and damages claims. Default judgment is still appropriate, however, because Plaintiffs' claims are premised on a theory of joint and several liability. *Compare* Compl. ¶¶ 272, 308-45, *with Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 978 (S.D.N.Y. Apr. 21, 1992) (finding that plaintiffs had alleged joint and several liability under RICO) *and Farberware, Inc. v. Groben*, No. 89-6240, 1991 WL 123964, at *10 (S.D.N.Y. July 3, 1991) (finding that plaintiffs had alleged joint and several liability in RICO conspiracy claim); *see also Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011) (finding accused counterfeiters and contributory infringers to be jointly and severally liable for claims under the Lanham Act). Although courts within this Circuit have concluded that it is inappropriate to enter a "default judgment against one of several defendants where the theory of recovery is joint liability, such that no one defendant may be liable unless all defendants are liable," courts have entered default judgments "where the theory of recovery is joint and several liability" because "each defendant is accused of individually causing the entire injury, [and] it would not be inconsistent to hold some but not all defendants liable." *Rafaeil*, 2005 WL 3880222, at *2 (discussing *Frow v. De La Vega*, 82 U.S. 552 (1872)) (citing *Farberware, Inc.*, 1991 WL 123964, at *3). As such, a default judgment as to liability is not premature. *Montcalm Pub. Corp.*, 807 F. Supp. at 978 (where plaintiff sought joint and several liability against defaulting defendants on RICO claims, it was "appropriate to enter judgment solely as to liability" and to consolidate the damages inquest with the "damages aspect of trial against the non-defaulting defendants").

Courts have also awarded damages against defaulting defendants even though related RICO claims were still pending against non-defaulting defendants. *Rafaeil*, 2005 WL 3880222, at *3. In *Rafaeil*, the court explained that plaintiff had suffered "significant monetary injury"

and "[p]ostponing the inquest would delay—and perhaps jeopardize—[the plaintiff's] recovery since a plaintiff cannot begin to collect on a judgment until it is final."  *Id.*  Other courts have similarly been willing to enter damages awards against defendants, like the Merchant Defendants, who are likely to seek to avoid the consequences of their default.  *See, e.g., Johannes Baumgartner Wirtschafts Und Vermogensberatung GmbH v. Salzman*, No. 08-2582, 2010 WL 3937270, at *1-2 (E.D.N.Y. Sept. 30, 2010) (granting a default judgment where there was a "high" risk that the defaulting defendants would "squirrel[] away assets" and there was "a good chance that none" of the appearing parties would litigate the case on the merits); *Maersk, Inc. v. Neewra, Inc.*, Civ. No. 05-4356, 2008 WL 1990648 (S.D.N.Y. Apr. 9, 2008), *report and recommendation adopted as modified*, 2008 WL 1986046 (S.D.N.Y. May 7, 2008) (awarding damages on RICO claim against defaulting defendants while RICO claims were still pending against non-defaulting defendants).

Here, there is already uncontested evidence in the record that counterfeiters like the Merchant Defendants are likely to try and hide their assets.  Holmes TRO Decl. ¶ 55.  As a result this Court has full authority to enter a damages award now.  However, the Court also has the authority to defer these questions until after further proceedings in the Renewed Action.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request an order:  (a) entering a default judgment against the Merchant Defendants on all claims; (b) awarding injunctive relief as requested in the Amended Complaint; (c) on their Lanham Act claims, awarding Plaintiffs an accounting based on the Merchant Defendants' illicit profits as set forth the Holmes Declaration, trebled pursuant to 15 U.S.C. § 1117(b), or in the alternative or where profits cannot be ascertained, $2 million per mark infringed per type of counterfeit goods sold as a proxy for an accounting, as set forth in the Holmes Declaration; (d) awarding Plaintiffs treble damages under

RICO as set forth in the Holmes Declaration to the extent not duplicative of Plaintiffs' Lanham Act recovery; or (e) in the alternative, entering judgment against the Merchant Defendants now and order that damages be determined through an inquest or such other mechanism as the Court may deem appropriate; and (f) for such other relief as this Court may deem just and proper.

Dated: New York, New York
   July 17, 2015

          Respectfully submitted,

          GIBSON, DUNN & CRUTCHER LLP

          By:   s/ Robert L. Weigel
            Robert L. Weigel
            Howard S. Hogan
            Alison L. Wollin
            Anne M. Coyle
            Kimberly L. Friedman

            200 Park Avenue, 47th Floor
            New York, New York 10166
            (212) 351-4000

            *Attorneys for Plaintiffs Gucci America, Inc.,*
            *Balenciaga S.A., Balenciaga America, Inc.,*
            *Bottega Veneta S.A., Bottega Veneta Inc.,*
            *Yves Saint Laurent America, Inc.,*
            *Luxury Goods International (L.G.I.) S.A.,*
            *and Kering S.A.*